UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

<u>NOT FOR PUBLICATION</u>

--------------------------------------------------------

In re

LAW FIRM OF FRANK R. BAYGER, P.C.

Case No. 02-11538 K

Debtor

--------------------------------------------------------

<u>ORDER AND OPINION</u>

The Court finds, as argued by the claimant's counsel, that Mr. Bayger's Objection to Claims 19 and 34 are not fully responsive to the Court's directions,[1] and are overruled.

On March 13, 2006, claimant's counsel submitted a 20-page, 75 paragraph Opposition to the Objection[2] that appended hundreds of pages of properly-supporting documents. On July 18, 2006, he submitted six further pages, in 18 paragraphs, with further documents.

Few of the 93 paragraphs have been responded-to by Bayger. At the most, Bayger argues that Debtor did not commit legal malpractice, as a matter of law.

The claimant's claims, however, rest also in breach of contract and fraud and deceit.

In other words, this is not a simple case of a law firm which overstated the value

---

[1]It is to be noted that current, substitute counsel for Mr. Bayger is relatively new to this case, and was not yet involved in the case when some of the Court's directions were issued to previous counsel.

[2]The initial objection was filed by the Trustee. The Court barred the Trustee from committing estate funds for such purpose until he performed his 11 U.S.C. § 704(a)(1) duty to convert the assets to cash. And the Court acknowledged that Bayger , as principal of the Debtor, could prosecute the Trustee's Objection at his own expense. He has done so, and that is the present posture. If the claimant's claim is disallowed, this is a "surplus money" case, in which the principal would receive the surplus.

of a plaintiff's claim or made a trial mistake.  To take one example, it is not denied that while the

Debtor represented the claimant, it entered into an affiliation with a larger, more-established law

firm, requiring the claimant's consent to the substitution of that firm as his personal injury

counsel; when that affiliation failed, Bayger, on behalf of the Debtor, induced the claimant to

discharge that older, larger firm, Bayger making various representations that turned-out to be

either false or mistaken.

Further, Bayger is now silent as to claimant's reliance on Bayger's own

statements to the State Court during the personal injury suit about proper trial preparation; as to

the comments that Bayger, on behalf of the Debtor, made to the State Court about the merits of a

late appeal, if allowed; and as to the fact that though Bayger, in attempting to establish that the

claimant could not prove that the attending physician would have testified (had his testimony

been taken and preserved for trial) that claimant was seriously injured, the claimant has provided

the physician's record of the claimant's treatment, over a course of six years, which record

appears to be in the claimant's favor.

There are other failures, by Bayger, to address the Court's direction to address the

93 paragraphs.

The objection is overruled.

That is not to say that the claimant's original suit against the amusement park

where he was injured was "worth millions" as Bayger is alleged to have said.  Nor is it to say

that

the claimant's claim against this estate is "worth millions."[3]  It is greatly to this claimant's credit

that he, through counsel, has repeatedly offered voluntarily to let all other non-insider claims in

this case be fully paid immediately if his claim is settled, even if claimant is to be paid "over

time."  Given the passage of time in this case, that might well mean simply a share of the surplus

that would be available to Bayger if the claimant's claim were to be disallowed.  (As the

Debtor's contingent fee cases have settled, etc., proceeds from its work as a law firm might have

reached the end.  There remain, however, issues about fixed assets, such as a valuable building in

which the Debtor may have a substantial equity interest.)

As the Court has ardently insisted on the record in open court, this case cries-out

for settlement.  Though not a § 502 "estimation," the Court suggests a settlement that is

somewhere between $100,000 and $999,999, and offers to remit the matter to arbitration or

mediation.  The matter is restored to the calendar for July 22, 2009 at 10:00 a.m. to discuss this

offer.

SO ORDERED.

Dated:          Buffalo, New York
                July 7, 2009

s/Michael J. Kaplan

_____

U.S.B.J.

---

[3]Though this writer has been statutorily prohibited from practicing law for the past 28 years of the 35 years he has been a member of this State's Bar, he considers it a matter for the Grievance Committee if lawyers are throwing such numbers around.  (That is not a reference to claimant's current counsel.  It is rather a reference to Bayger, if the allegations are true.)